**EDMONDSON v. CARROLL.**

No. 13974.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 27, 1939.

Rehearing Denied Dec. 8, 1939.

Charles T. Rowland, of Fort Worth, for appellant.

Slay & Simon and H. J. Zimmerman, all of Fort Worth, for appellee.

SPEER, Justice.

This suit originated in 1927, and only enough of its early history will be stated to disclose the nature of this appeal.

Ralph Carroll, for himself and as trustee for others, was, prior to July 16, 1927, the owner of two notes aggregating $10,-000, secured by a deed of trust lien on certain lots in Waxahachie, Texas. Upon these lots was a brick building in which and attached thereto was a freight elevator. At the date mentioned, W. T. Pittman was the record owner of the building and lots, subject to Carroll's debt and lien.

On July 16, 1927, Carroll filed suit in the District Court of Tarrant County for his debt and foreclosure of his lien. Pittman and others were made parties defendants. On the day suit was instituted Carroll caused to be issued a writ of seques-

tration, and had it placed in the hands of the sheriff of Ellis County for execution. On the following Monday the officer took into his possession the real estate with the building thereon. On Sunday preceding the date of levy, Pittman sold and gave possession of the elevator to H. Edmondson, who removed it out of the building and hauled it to Fort Worth, Texas, on the same day.

The suit of Carroll proceeded to judgment for something over $11,000, and foreclosure of his lien. The property was sold out under execution and Carroll became the purchaser for approximately $250, which amount was credited on the judgment.

Thereafter, Carroll learned that Edmondson had the elevator and its appurtenances in his possession, dismantled as it was when he hauled it from Waxahachie. Carroll filed suit against Edmondson and Pittman for the value of the elevator and to foreclose his lien thereon. Carroll made the statutory affidavit for sequestration and caused a writ to be levied on the property on September 26, 1927. The equipment at that time was still dismantled and stacked in Edmondson's warehouse. The sheriff, in making the levy, did not molest the equipment, but potentially took possession, being advised by Edmondson that he would replevy it. Edmondson filed his replevy bond on September 27, 1927, and the officer returned that bond with the writ. Edmondson resisted Carroll's suit, alleging that he in fact had purchased the elevator prior to the institution of the foreclosure suit and had no knowledge that such action was pending when the elevator was received by him. He further prayed for judgment over against Pittman, who had sold him the elevator, for any amount that Carroll might recover against him, Edmondson. Daniel S. Hartson, S. C. Cunningham, R. C. Sweeney and C. M. Butcher filed a plea in intervention, claiming to own and asking to be established a second lien on the property. Upon a trial, the court found that no process was issued or served on the plea in intervention, no appearances had been made thereon, and dismissed the action and claims of interveners. Judgment was entered for Carroll against Edmondson and Pittman and for Edmondson over against Pittman. Upon appeal to this court by Edmondson, the judgment was reversed because the wrong measure of damages had been applied by the court. See Edmondson v. Carroll, Tex.Civ.App., 28 S.W.2d 250, affirmed by Commission of Appeals, 41 S.W.2d 64.

After reversal by this court of the previous judgment, the plaintiff amended his pleadings so as to meet conclusions expressed by us and sought his damages for the conversion by Edmondson and Pittman of the elevator. Edmondson again answered by pleading over against his co-defendant, Pittman, to recover any sum that might be awarded to Carroll against him. In addition, Edmondson sued Carroll in cross-action for actual and exemplary damages sustained by reason of the wrongful and malicious issuance and service of the writ of sequestration. Plaintiff Carroll plead the statute of limitations against Edmondson's cross-action and that plea was by the court sustained. Upon another trial, Carroll recovered judgment against Edmondson for $1,500, and since the court had sustained Carroll's plea of limitation, Edmondson recovered nothing on the cross-action. Edmondson again appealed to this court, and by an opinion reported in Edmondson v. Carroll, 65 S.W.2d 1107, 1110, writ dismissed, the judgment of the trial court was affirmed in part and reversed and remanded in part, in this language:

"The cause is remanded to the trial court for a trial of the cross-action of appellant [Edmondson]. The judgment, so far as it disposes of appellee's [Carroll's] action for damages, is approved at the cost of appellee, and the trial court will give effect hereto in the judgment upon trial of the cross-action."

Upon the remand of the case under the above order, Carroll paid the costs of the appeal. Edmondson had previously paid $169 of that cost and that sum was paid to the District Clerk by the Clerk of this court for delivery to Edmondson. Thereafter, Carroll applied for and procured a writ of garnishment against the District Clerk in an effort to reach the $169 held by him for Edmondson.

A fourth amended plea in cross-action was filed by Edmondson against Carroll, in which he sought to recover actual and exemplary damages for the wrongful issuance and service of both the writs of sequestration and garnishment. This amended pleading contained all necessary allegations to entitle Edmondson to recover under proper proof.

Jury trial was had upon special issues. The issues and answers were as follows:

"Question One: Do you find from a preponderance of the evidence that Ralph Carroll did not, in good faith, make the affidavit upon which the writ of sequestration in question was issued and served—that is, that said Ralph Carroll did not, at said time, have reasonable grounds for believing that said Edmondson would injure or ill treat the freight elevator, as stated in said affidavit for said writ of sequestration? Answer: Did not.

"Question Two: ·If you have answered the preceding question, yes, and only in that event, then answer: Do you find from a preponderance of the evidence that H. Edmondson sustained actual damages—that is, financial loss—by reason of the issuance and service of said writ of sequestration? Answer: No.

"Question Three: Do you find from a preponderance of the evidence that said Edmondson was kept from being entitled to collect rent on the building in which said elevator was installed solely because he was prevented from installing said elevator? Answer: No.

"Question Four: From a preponderance of the evidence, when do you find said elevator was installed in said building and put in condition for use and service? Answer: On or about Oct. 15th, 1927.

"Question Five: Do you find from a preponderance of the evidence that the installation of said elevator in said building was delayed solely because of the incomplete condition of said building in which it was installed? Answer: No.

"Question Six: If you have answered Question Two in the affirmative, and only· in that event, then answer: From a preponderance of the evidence, in what amount, if any, do you find said Edmondson has sustained actual damages?

"You are instructed that in arriving at your answer to this question, you must not take into consideration nor allow said Edmondson any sum as attorneys' fees, nor for time lost from his work or while attending court.

"Answer: ———

"Question Seven: Do you find from a preponderance of the evidence that said Edmondson suffered any loss of rent on his building solely by reason of his being unable to sooner install said elevator in said building? Answer: No.

"Question Eight: If you have answered the preceding question, yes, and only in that event, then answer: From a preponderance of the evidence, what amount of rent, if any, did said Edmondson lose on said building solely by reason of the delayed installation of said elevator in said building, if you find that such installation was delayed?

"Answer: ———

"Question Nine: Do you find from a preponderance of the evidence that the loss of rent, if any, incurred by said Edmondson on said building was caused solely by reason of said building not being sooner completed? Answer: Yes.

"You are instructed that by the word 'malice', as used herein is meant wickedness of purpose or a spiteful or malevolent design against another person—a purpose to injure another person or a wanton and wilful act which shows a reckless disregard of the rights of another.

"Bearing in mind the foregoing definition, you will answer the following question:

"Question Ten: From a preponderance of the evidence do you find that Ralph Carroll made the affidavit upon which the writ of sequestration was issued and served herein with malice toward H. Edmondson?

"Answer: ———

"Question Eleven: If you have answered the preceding question, yes, and only in that event, then answer: Do you find from a preponderance of the evidence that H. Edmondson is entitled to be awarded damages against the plaintiffs herein, as exemplary damages by reason of the malicious or wanton and willful act of Ralph Carroll in making the affidavit upon which said writ of sequestration was issued and served?

"Answer: ———

"You are instructed, in this connection, that exemplary damages are damages which may be awarded as a punishment against a person or persons for an act done with malice or an intent to injure another person.

"Question Twelve: If you have answered the preceding question, yes, and only in that event, then answer: In what amount, if any, do you find from a preponderance of the evidence that said Edmondson is entitled to as exemplary damages against the plaintiffs herein?

"You are instructed that in answering this question, you may take into consider-

ation any amount which said Edmondson has paid or become liable to pay as attorneys' fees occasioned by the issuance and service of said writ of sequestration, and the value of whatever time, if any, which said Edmondson lost because of the issuance and service of said writ of sequestration. Any amount which you may find as exemplary damages herein, if any, must be reasonably proportionate to the amount of actual damages, if any, you have allowed in answer to preceding questions, if you have found in answer to such questions that he has sustained any actual damages.

"Answer: ⸻."

The trial court entered judgment upon the verdict of the jury, in which judgment it was recited that the issues not answered by the jury were, in the light of those that were answered, immaterial. That the writ of garnishment procured to be issued and served by Carroll, upon which Edmondson sought to recover damages, was not wrongful as a matter of law, and that Edmondson was not entitled to recover therefor. That Carroll was entitled to recover a judgment on said verdict as against Edmondson's cross-action. The judgment further contains a recitation of the previous judgment in favor of Carroll against Edmondson for $1,500, which this court had ordered to be given effect, and the court complied therewith, and also made effective Edmondson's judgment for a like amount against Pittman. The judgment further provides that Edmondson take nothing against Carroll by virtue of the cross-action. Edmondson's motion for new trial being overruled, he has perfected his appeal to this court. H. Edmondson is appellant and Ralph Carroll is appellee.

Appellant has brought into his brief fifty-four assignments of error, but many of them are not briefed and we may safely assume that they are not relied upon for reversal; they are waived.

■ This being a suit in cross-action for damages for the wrongful and malicious suing out of a writ of sequestration and a writ of garnishment, naturally the assignments relied upon must be considered in the light of the relief sought. This being true, we shall discuss them in groups in an effort to ascertain if there was error in the manner of submitting special issues and refusal by the court to submit those requested. Appellant submitted and requested the court to give 42 special issues, all of which were by the court refused, and error

is assigned to the action of the court in each instance. Neither of the requested issues was in a form that the court could have properly given it. The burden of proof was not placed on either party to the suit, and if either had been given by the court in the form requested, reversible error would have been committed. It is provided by Article 2186, R.C.S., that either party may present to the trial court such special instructions as he desires to be given and it becomes the duty of the court to give such of them as he deems proper and to reject those not considered proper. Article 2190, R.C.S., Vernon's Ann.Civ.St. art. 2190, provides that when the court submits a case on special issues he shall submit it upon all the issues made by the pleadings and evidence. Failure to submit an issue will not be deemed ground for reversal of the judgment unless its submission has been requested in writing, by the party complaining of the judgment.

■ Construing these statutes, it has been uniformly held by our courts that if a party whose duty it is to present and request the giving of an issue, does so, the requested issue must be in writing and in such form as it may be properly given. 41 Tex.Jur., p. 1050, sect. 245; Speer's Special Issues, p. 371, sect. 251; Kaiser v. Newsom, Tex.Civ.App., 108 S.W.2d 755, writ dismissed.

By Article 6840, R.C.S., it is provided that the writ of sequestration shall issue in the following cases:

"Section 2. When a person sues for the title or possession of any personal property of any description, and makes oath that he fears the defendant or person in possession thereof will injure, ill-treat, waste or destroy such property, or remove the same out of the limits of the county during the pendency of the suit."

By Article 6841, R.C.S., it is provided that an affidavit for sequestration shall contain certain requisites; as applicable to this case, they are, in substance: (2) If the suit be to foreclose a lien on property, it must appear that such lien exists, that it is just and unsatisfied and the amount of same unsatisfied, and the date when due. (3) The property must be described with such certainty that it may be identified, giving the value thereof, and the county in which it is situated.

The affidavit for the writ in this case contained all of the above requisites; it is not

384

contended that the affidavit was not correct in form; but that the statements therein were not true; that the writ was not sued out in good faith with reasonable or probable grounds upon the part of affiant to believe they were true. That the writ was thus procured falsely, wrongfully and maliciously, for the purpose of injuring and harassing the defendant, for all of which actual and exemplary damages were sought.

To give effect to appellant's requested issues, we find that Nos. 1 to 14 and 17 to 19, all inclusive, presented in as many different ways some one of the elements of the requisites of the affidavit for the writ. By reference to the first special issue given by the court, hereinabove quoted, it will be observed that the court inquired of the jury, properly placing the burden of proof, whether appellee did not at the time he made the affidavit, have reasonable grounds for believing that said appellant would injure or ill-treat the freight elevator as stated in said affidavit for the writ. The issue was answered, "Did not".

We pause here long enough to say that the form of the issue as framed and submitted by the court could have been vastly improved upon, but it did in fact inquire if appellee had reasonable grounds to believe that appellant would injure or ill-treat the property in his possession, and this is the basis for appellant's suit. This was the ultimate issue to be determined on that phase of the case.

█ In appellant's brief, discussing the merits of his requested issues referred to, he argues that the issue, as submitted by the court, was improper because (1) it was a general charge, and (2) it was multifarious, having embraced more than one fact issue to be found by the jury upon an answer of "yes" or "no". This attack on the first special issue submitted now comes too late in this case. No objection or exception was made by appellant to any part of the court's charge, before it was submitted to the jury. Not having objected, before its submission, to the manner in which the issue was framed, appellant waived any errors therein and in law, consented that it be given as prepared by the court. Article 2185, R.C.S.; Belzung v. Owl Taxi et al., Tex.Civ.App., 70 S.W.2d 288, writ dismissed; Miller v. Fenner, Beane & Ungerleider, Tex.Civ.App., 89 S.W.2d 506, writ dismissed; Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920, 921. In the last cited case, the Supreme Court said, with respect to the

point being discussed: "If the court had given them, or either of them [the requested special issues], it would have necessitated a new trial or a reversal of the judgment on appeal. Gulf, T. & W. Ry. Co. v. Dickey, 108 Tex. [126], 127, 187 S.W. 184."

The same is true in this case; we have shown that the requested charges were not in proper form to be given by the court, and to have given them or either of them would have required the granting of a new trial or a reversal on appeal, when the questions were raised. Again, as we view the situation here, even though if appellant were in a position to complain of the first issue submitted, we fail to see how he could consistently do so, for it was answered in his favor. The answer to that issue was to the effect that Carroll did not have reasonable grounds, at the time he procured the writ, to believe that Edmondson would injure or ill-treat the property, as stated in the affidavit. This is identically what appellant contended for, and upon which theory he based his suit for actual damages.

█ Irrespective of what we have said as to the rule requiring a party to object and except to a court's charge before complaining on appeal, and the necessity of presenting requested issues in a form proper to be given, we have studied carefully each and every one of appellant's requested issues with a view to determining whether or not there was fundamental error in the record. We find that each of said requested issues, although they failed to place the burden of proof, was embraced by the court in his main charge; excepting those relating to the writ of garnishment, which we shall have occasion later to discuss. The court is never required to submit an issue more than once; no objection being raised by appellant to the manner in which the court proposed to submit them, there was no error shown by a refusal to again submit them as requested by appellant.

█ In this connection, it is asserted by appellant in his brief that he had plead that many of the grounds for sequestration claimed in the affidavit were untrue and, "Besides in the long litigation Carroll failed to establish any character of right, claim, lien or otherwise to the said freight elevator; and the evidence showed that none of the allegations of said affidavit existed at the time of its making."

We cannot agree with the contention as made. The existence of Carroll's debt, his lien on the elevator as a part of the real

estate, the sale by Pittman to Edmondson and the amount recovered in the second trial were all adjudicated and finally determined by the trial court, and affirmed by this court, Edmondson v. Carroll, 65 S.W.2d 1107, supra. These matters were not subject to review upon the trial from which this appeal is prosecuted.

Furthermore, upon the trial of this case it was stipulated that prior to the institution of the suit by Carroll he was the owner of an indebtedness of $10,000, secured by a lien on the Waxahachie building and lot upon which it was situated; that the elevator was in the building and was attached to it and became a part of the real estate, and that condition existed at the time the writ of sequestration was issued in July of 1927.

The jury having found by the first issue that Carroll did not have reasonable grounds to believe, at the time he procured and caused the writ of sequestration to be levied, that appellant would injure or ill-treat the property while in his possession, it was incumbent upon appellant to establish that he suffered damages as a result thereof. This was determined against him by the jury, in answer to the second special issue. It is contended that the answer was against the great preponderance of the evidence and not supported by any evidence. We are not at liberty to pass upon whether or not it was against the preponderance of the evidence; this was a matter for determination by the jury. Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Post v. State, 106 Tex. 500, 171 S.W. 707; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919, writ dismissed, judgment correct; Worth Finance Co. v. Charlie Hillard Motor Co., Tex.Civ.App., 131 S.W.2d 416. Whether or not there was any evidence of probative force to support the jury finding is a question of law of which this court may take cognizance. The undisputed facts, as disclosed by the evidence, are that the dismantled elevator was stacked in appellant's warehouse when the levy was made on September 26, 1927. In fact, appellant made the writ and officer's return a part of his pleadings. The officer making the levy potentially took possession of the property, did not molest or disturb it, but being informed that appellant would replevy it, so stated in his return. Appellant filed his replevy bond on September 27, 1927, and

thereafter retained possession of the elevator. It is contended that the levy of the writ was wrongful, and that appellant lost three months rent on his building, at $350 per month, because of the wrongful acts of appellee in causing the writ to be levied. It also appears that at the time the writ was served, appellant's building was incomplete and that the elevator was installed on about October 15, 1927, and that under his rental contract with the tenant by which rentals were to begin, the building was finished and accepted by the tenant and rentals began with December 15, 1927. In response to special issue 3, the jury found that appellant was not prevented from collecting rent solely because he was prevented from installing the elevator. Issue No. 7 is virtually to the same effect. Again special issue 9 and its answer found that any loss of rent sustained by appellant was solely because his building was not finished. But, appellant contends that in any event he was entitled to recover nominal damages for the time lost and labors performed by him in making the replevy bond. The bond was signed by individuals and it does not appear that any premium or consideration was promised or paid for such signatures.

In the view we take of the evidence, we think there was an abundance of undisputed testimony that the affidavit was true, wherein it was asserted that affiant feared appellant would injure or ill-treat the property during pendency of the suit. As stated, when the writ was served, the elevator and its necessary equipment were dismantled and stacked in appellant's warehouse. Appellant had told a partner of Carroll that he had purchased the property and was going to install it. To do so would require the fastening of certain parts to a concrete base and heavy wooden timbers to the walls of the shaft. If appellee should recover in the suit the property would have been diminished in value (injured or ill-treated), to the extent of damages done to the heavy timbers, and the expense of again dismantling it.

We now revert to appellant's contention that the answer to special issue No. 2 was not supported by the evidence. By answer to that issue, it was found that appellant had suffered no actual damages as a result of the issuance and service of the writ of sequestration. It is urged that when the jury answered the preceding question, to the effect that the writ was wrongfully

levied, appellant was at least entitled to nominal actual damages. We have carefully studied the opinion in Graham v. Walters, Tex.Civ.App., 45 S.W.2d 281, cited by appellant, and do not consider that it supports the contention made by him. No light would be shed upon the point before us to review the questions there discussed. The only similarity between that and this case is that in the case cited it was held that where it was found that the writ of sequestration was wrongfully issued defendant would be entitled to recover all damages sustained by him as a result of the wrongful act. The announcement is fundamentally correct, but the point here is that the jury found appellant had suffered no damages as a result of the wrongful issuance and service of the writ.

█ The question of whether or not appellant sustained any damages by reason of the service of the writ was fairly put to the jury and answered against his contention. All of the facts were in evidence and this being resolved against appellant, we cannot substitute our opinion for that of the jury. See the authorities above cited, on this point.

█ Several assignments are urged by appellant, in which he complains because the court did not submit his requested issues on exemplary damages. As above stated, neither of these requested issues placed the burden of proof on either party and no exception or objection was taken to the manner in which the same issues were submitted by the court. By reference to the sixth special issue above quoted, it will be noted that the court submitted the issue of exemplary damages, conditioned that the jury had answered special issue No. 2 in the affirmative, that is that appellant had sustained any actual damages. But as we have seen, the inquiry as to actual damages was answered in the negative and no answer was made to the issues inquiring about exemplary damages. A group of assignments are presented complaining of the court receiving the verdict of the jury and entering judgment thereon when none of the issues pertaining to exemplary damages was answered. For reasons already stated, there was no error in the court's refusal to give the requested issues. Nor do we think there was error in entering judgment on the verdict rendered, when no answers were made to the inquiries about exemplary damages. It is almost axiomatic in our jurisprudence, in cases of tort, such as here relied upon, that a party may not recover exemplary damages when actual damages are not sustained. 13 Tex.Jur., p. 240, sect. 132; Sanders v. O'Connor, Tex.Civ.App., 98 S.W.2d 401, writ dismissed; Jenney v. Jackson, Tex. Civ.App., 46 S.W.2d 418, and the cases there cited. It follows, then, that when no exemplary damages could have been recovered, issues which submitted that question to the jury become immaterial and the judgment to be entered would not be affected, regardless of how they were answered. The judgment, as entered, recited that the court, in view of the verdict returned, considered the unanswered issues immaterial. In this we think he was correct, and no error is presented by the assignments. 41 Tex.Jur., p. 1222, sect. 358. Aside from this, we have been cited to no testimony, nor have we been able to find such in the record, which tends to show that the writ was procured and caused to be served under the conditions described in the court's charge in connection with exemplary damages. The explanation given by the court (and assented to by appellant) reads:

"You are instructed that by the word 'malice', as used herein is meant wickedness of purpose or a spiteful or malevolent design against another person, a purpose to injure another person or a wanton and wilful act which shows a reckless disregard of the rights of another." The court is never required to submit an issue upon which there is no evidence to support it.

Another phase of appellant's cross-action was based upon the wrongful, malicious and wicked procurement and service of a writ of garnishment by appellee upon W. E. Alexander, District Clerk, under which writ $169 of appellant's funds were impounded. The affidavit for the writ was made by appellee's counsel and sworn to on August 31, 1934. This was subsequent to the hearing by this court of the appeal from the $1,500 judgment in appellee's favor, 65 S.W.2d 1107, supra. The affidavit is in statutory form for garnishment after judgment. It recites the existence of the judgment for $1,500; that said judgment is valid and subsisting and wholly unpaid. It further recites: "And said defendant (Edmondson) has not, within affiant's knowledge, property in his possession within this State subject to execution sufficient to satisfy said judgment * *." Upon the trial appellant testified to the

ownership of property in Tarrant County, subject to execution, which was of a value greater than the amount of the judgment. He requested the giving of eight special issues on his claim for damages, growing out of the garnishment writ. Requested issue No. 24 was the basis for the subsequent seven. It reads: "From the evidence state and find if the affidavit for garnishment against W. E. Alexander, District Clerk, the statement therein contained that H. Edmondson did not have properties in the State sufficient to make $1,500.00, was true or false?"

The requested issues were all refused by the court. Even if the truth of the affidavit which stated in substance that appellant did not, within affiant's knowledge, have property in his possession sufficient to pay the debt, had been the subject of inquiry, it would have been improper to have submitted an issue worded as the one requested. If there had been any testimony on the point, the only proper inquiry would have been whether the statement, as made by affiant in the affidavit, was true or false. The trial court found by the judgment as entered that the writ of garnishment was not wrongful as a matter of law, and that therefore appellant could not recover anything based thereon. We think the trial court properly disposed of that question. There was not a word of testimony tending to show that the person who made the affidavit for garnishment had any knowledge of certain properties which appellant said he owned; this is the only question involved in the affidavit, except the existence of the judgment upon which the writ was based. The existence of the judgment was undeniably established. This court speaking through Mr. Justice Power, in Griffin v. Cawthon, 77 S.W.2d 700, writ refused, clearly expresses our views and we here refer to what is there said, and upon authority of that case, we overrule the assignments of error in regard to the garnishment writ.

Other assignments complain because the trial court overruled the motion for new trial, based upon conflicts in the jury verdict in answers to special issues three and five. We think, under the facts developed, each of the answers was consistent with the other, and hence, we see no error in the ruling.

The fifty-second assignment challenges the correctness of the court's judgment in giving effect to the $1,500 judgment in favor of Carroll against Edmondson, upon the grounds that the claim upon which the judgment was rendered in fact belonged to the co-partnership of Butcher & Sweeney, composed of R. C. Sweeney, C. M. Butcher and Ralph Carroll. It is contended that the court should have vacated that judgment upon the trial from which this appeal was taken. The question presented was before the trial court when the judgment was entered in 1932, and resolved against appellant's contention. This court affirmed that part of the judgment (65 S.W.2d 1107, supra) and reversed the case for a hearing upon the cross-action only, as hereinabove shown. There is no merit in the contention and it is overruled.

The fifty-third assignment is a suggestion of fundamental error. The matters complained of were not presented to the trial court in the motion for new trial and therefore can only be reviewed by us if fundamental error is shown. The transcript before us reflects that the trial was had on appellee's First Amended Supplemental Petition and appellant's substituted (September 26, 1938) Fourth Amended Answer and Cross-Action, for pleadings filed September 17, 1934. The judgment from which this appeal was had bears date of October 5, 1938. There is also found in the transcript a plea of intervention by Daniel S. Hartson, S. C. Cunningham, R. C. Sweeney and C. M. Butcher, filed November 8, 1927. The judgment before us does not mention or in any way attempt to dispose of those interveners. It is here contended that for that reason the judgment appealed from is not a final one, and consequently is fundamentally wrong.

We are not unmindful of the well established rule of law that a judgment must dispose of the rights of all parties to the action. By the date of the filing of the plea in intervention it will be observed that it was prior to rendition of the judgment entered on April 4, 1929, from which an appeal was taken to this court and reported in 28 S.W.2d 250, by Supreme Court in 41 S.W.2d 64. We may take judicial knowledge of proceedings had in this court. In the judgment of the court from which that appeal was taken, the trial court stated substantially that no citation having been issued or served in the plea of intervention, and that no appearances having been made therein, the alleged

388

action by interveners was dismissed. No appeal from that order was prosecuted by the interveners and that judgment insofar as they were concerned became final. Neither of the two previous records on former appeals nor the one now under consideration discloses that interveners ever thereafter participated in any of the trials, nor that any other party answered or appeared in response to their plea. The appeal bond made by appellant in this case only names Ralph Carroll (appellee) as a party adversely interested in the litigation. In neither of the two last appeals do interveners as such appear to have been involved in this litigation. The suggested fundamental error presents no impediment to the validity of the judgment now under consideration, and it must be overruled.

To avoid extending this opinion to a greater length we have refrained from discussing each assignment separately and from giving all the reasons which could be urged in support of our conclusions herein expressed. But we have considered carefully each assignment and have concluded that they should all be overruled.

The judgment of the trial court is affirmed and it is so ordered.