## GRIFFIN v. CAWTHON.
### No. 13016.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 2, 1934.

Rehearing Denied Dec. 21, 1934.

Marvin H. Brown and M. Hendricks Brown, both of Fort Worth, for appellant.

Ireland, Hampton, Samuels, Foster, Brown & McGee, and A. M. Herman, all of Fort Worth, for appellee.

POWER, Justice.

F. W. Cawthon, appellee, brought suit against T. A. Griffin, appellant, on March 5, 1932. On the same day he sued out a writ of garnishment which was served on the Trinity Construction Company, Inc., who was then indebted to the defendant, T. A. Griffin, in a sum more than $7,000. On March 15, 1932, appellant filed his replevin bond in the sum of $8,000. This bond was signed by T. A. Griffin as principal and E. L. Martin and G. C. Arrington as sureties. The notes sued on were five of six notes dated July 13, 1931, signed by T. A. Griffin, appellant, payable to the D. A. Foley Construction Company of Los Angeles, Cal. Five of these notes were for the sum of $500 each, and had respective maturities on August 20, September 20, October 20, November 20, and December 20, 1931. The sixth note was for the sum of $1,000, and matured January 20, 1932. The note in the sum of $500, maturing on August 20, 1931, had been paid prior to September 20, 1931, and had never been in the possession of appellant. Each of the notes numbered 2, 3, 4, 5, and 6, forming the basis of this suit, bore indorsement as follows: "9–20–31. Pay to the order of F. W. Cawthon, D. A. Foley Const. Co. by D. Coffey." The notes were given in payment for the purchase price of a drag line or dredging machine, sold by D. A. Foley Construction Company to the appellant, Griffin. The total of the notes so given on July 13, 1931, was $3,500. Prior to the date of the notes, the drag line had been in the possession and use of appellant under an agreement to pay rental, and prior to the date of the notes appellant had paid to D. A. Foley Construction Company, as rental, the sum of $1,000.

In the pleadings of appellant and his testimony, he claimed that at the time he purchased the machine from D. A. Foley, who was at the time president of the construction company, it was agreed that the $1,000 paid for rental on the machine prior to July 13, 1931, would be credited on the $1,000 note maturing on January 20, 1932, and sought to offset the sum of $1,000 paid as rental against the note for $1,000 sued for. The alleged oral agreement for the sale of the machine was made four or five days prior to July 13, 1931, on which date the notes in the suit, as well as the one already paid, were executed. Appellant and appellee agree in their testimony that appellant, appellee, and D. A. Foley were together and in close proximity at the time D. A. Foley and appellant came to an oral agreement for the sale of the drag line. Appellee testified that he never heard of a contention by appellant that the $1,000 rental paid in June, 1931, was to be considered as a payment on the price of the drag line and that the balance to be paid was only $2,500 until after this suit was filed on March 5, 1932. Appellant testified that the understanding for such deduction was orally made in Dallas, Tex., four or five days prior to July 13, 1931, when the notes were executed, and that appellee knew of the contention prior to the filing of this suit. Upon this phase of the testimony there was a direct conflict as to the existence of the alleged agreement and as to appellee having knowledge of the alleged agreement or being advised thereof prior to the time the suit was filed.

The trial court submitted to the jury only one issue, which was as follows: "Do you find from a preponderance of the evidence that at the time the defendant T. A. Griffin executed the notes in question there was an understanding by and between the said Griffin and the Foley Construction Company that the note for $1000 in question in this suit was to be credited with the $1000 previously paid as rental by the defendant Griffin to the Foley Construction Company?"

This issue was answered "No" by the jury, and formed the basis of a judgment for plaintiff for the total amount sued for.

Appellant excepted to the issue submitted because the court failed to define and give a legal definition of the word "understanding." Among other things, appellant pleaded that he executed the notes conditioned and with the understanding on his part that the credit for $1,000 was to be given on the $1,000 note. His testimony was to the same effect. It is the opinion of this court that the issue submitted was in harmony with the pleadings and evidence and that the court did not err in refusing to define the word "understanding."

Appellant submitted special issues 1 and 2, which were refused by the court; the issues being as follows:

"1. Do you find from a preponderance of the evidence that the defendant T. A. Griffin at the time he executed the notes in question informed the Foley Construction Company he would pay only an amount of $2,500.00 in addition to the $1,000.00 paid as rental as the purchase price for the drag line machinery?"

"2. Do you find from a preponderance of the evidence in this cause that at the time the Foley Construction Company received the notes in question from T. A. Griffin that they understood or that they were informed that Griffin was delivering the notes with the understanding that he would be given a credit on the purchase price of the drag line with the $1,000.00 previously paid as rental on such machinery?"

We are of the opinion that the ultimate fact to be determined was submitted by the court in the special issue submitted, and that the offer of special issues Nos. 1 and 2 sought only to procure the submission of issues which were purely evidentiary and not a controlling or ultimate question, and that the court did not err in refusing to submit such special issues.

At the time the suit was instituted, appellee applied for a writ of garnishment. The affidavit for garnishment, as well as the application for the writ, states that "the defendant has not within affiant's (plaintiff's) knowledge property in the state subject to execution sufficient to satisfy such debt."

Appellant's pleadings set up that the writ of garnishment was sued out maliciously by the plaintiff and at a time when the plaintiff knew that appellant possessed and owned a sufficient amount of property within the state of Texas subject to execution to satisfy the debt sued for, and that the writ of garnishment, effective as to more than $7,000, damaged the appellant to the extent of $14.52, being interest at the rate of 6 per cent. per annum for eleven days, and the amount of $50 legal fee for making the replevy bond, and $100 for the loss of time and expenses in getting such fund released, and his exemplary damages by virtue of the wrongful and malicious suing out of such writ.

The trial court refused to submit to the jury any special issues with reference to this alleged damage, either actual or exemplary.

Only appellant and appellee testified on this issue. The appellant testified, in substance, that he owned property in various sections of the state to the value of more than $100,000; that the property was all incumbered, much of it for large amounts. He did not testify that appellee had any knowledge of this property.

Appellee, called as a witness for appellant, testified, in effect, that he had known appellant for about ten years; that in 1931 and 1932 he had appellant's word for it that he did not have property in Dallas; that he did not investigate the records in Dallas county; that he worked for appellant three months in 1931; that at the time he worked for him he knew of machinery owned by appellant; that he knew in 1931 that he owned machinery in Dallas, but did not know whether he still had it; that he knew in the year 1931 about 20 mules which Mr. Griffin was working at Eagle Pass and he understood that he claimed them. There was no evidence as to the value of the machinery or of these mules, or whether or not they were incumbered, or that appellee had knowledge of the ownership when garnishment was applied for; that, while he worked for appellant at Eagle Pass, he was insisting that the notes held by him be paid, and that appellant stated that he was unable to pay them; that he had borrowed to his full financial limit at the bank; that he also told him that he owned a farm in Collin county, but that it was incumbered to the extent that it was not worth the notes that were on it.

The issue joined as to the pleading was whether or not appellee, at the time the writ of garnishment was applied for, had property in the state, within appellee's knowledge, subject to execution sufficient to satisfy such debt. We have carefully read the evidence in detail on this point and are of the opinion that appellant does not show that appellee knew of sufficient property to satisfy such debt, subject to execution, owned by appellant at the time the application for the writ was applied for. This being true, the court did not err in refusing to submit the issues of wrongful garnishment to the jury.

We have considered all propositions submitted by appellant, and find no error, and the judgment of the trial court is affirmed.